# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

RODRIGO ALEJANDRO VILLEGAS
SALAZAR,

      Petitioner,

vs.

SHERIFF OF LINN COUNTY, et al.,

      Respondents.

No.  C26-98-LTS-MAR

**MEMORDANDUM
OPINION AND ORDER**

## I.  *INTRODUCTION*

This case is before me on petitioner Rodrigo Alejandro Villegas Salazar's supplemental petition (Doc. 15) for a writ of habeas corpus under 28 U.S.C. § 2241 and motion (Doc. 2) for a temporary restraining order.  Villegas Salazar is an alien being held in custody without a bond hearing as his removal proceedings are ongoing.  *See* Doc. 1.  He claims his detention violates his procedural due process rights.  In an initial review order (Doc. 3), I directed Respondents (collectively, the Government)[1] to respond to the petition, which it has done (Doc. 7).  Villegas Salazar has replied (Docs. 11, 15).  Oral argument is not necessary.  *See* LR 7(c).

## II.  *BACKGROUND*

Villegas Salazar is a Venezuelan national who arrived in the United States in August 2022.  Doc. 10-2 at 1.  He was encountered at the border and detained, where he was referred for a credible fear interview.  Doc. 15 at 4.  The asylum officer conducting the interview found that Villegas Salazar demonstrated a credible fear of persecution or

---

[1] Though the Government's reply was filed only on behalf of the federal respondents and not the state employees (Doc. 7 at 2 n.1), this order will apply to all respondents with equal force.

torture, issuing him a Notice to Appear in removal proceedings. Doc. 10-2 at 1–2. In November 2022, Villegas Salazar filed an Application for Asylum and for Withholding Removal and in December 2022, the Secretary of Homeland Security paroled Villegas Salazar under his discretionary humanitarian parole authority. Doc. 10-3; *see also* 8 U.S.C. § 1182(d)(5)(A). The parole authorized Villegas Salazar's release for one year and would automatically terminate unless extended by Immigration and Customs Enforcement (ICE). Doc. 10-3. The Government represents that Villegas Salazar's parole was never extended, but that he was not re-detained after his parole expired. Doc. 10-1 at ¶¶ 18–19. Villegas Salazar maintains that in the three years since he was paroled he has appeared at every immigration proceeding he was aware of, lived in stable housing, been self-employed while paying taxes, has family ties in the United States including extended family serving in the armed forces and does not have a criminal history beyond the misdemeanor that precipitated his detention. Doc. 1 at ¶¶ 8–12; Doc. 15 at 4.

In April 2026, Villegas Salazar was arrested in Cedar Rapids, Iowa, for public urination and later pleaded guilty to that simple misdemeanor. Doc. 10-4; *see also City of Cedar Rapids v. Villegas Salazar*, Linn County Case No. CRSMSM144619. Immigration officials placed an immigration detainer on Villegas Salazar while he was in jail. Doc. 10-5. The day after his arrest he was released into ICE custody, who has detained him since in the Linn County Jail. Doc. 10-1 at ¶¶ 20, 22.

Villegas Salazar filed his initial petition pro se. *See* Docs. 1, 2. The Government filed a response (Doc. 7) to that petition and Villegas Salazar filed a pro se reply (Doc. 11). After those filings, the court appointed the Office of the Federal Public Defender for the Districts of Iowa to represent Villegas Salazar. Villegas Salazar's appointed

counsel then filed a supplemental petition (Doc. 15) that raises the same substantive arguments Villegas Salazar raised in his pro se petition.[2]

### III.    STANDARD OF REVIEW

Habeas corpus relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). For relief, a petitioner must prove by a preponderance of the evidence that his detention is unlawful. *Phongsavanh v. Williams*, 809 F. Supp. 3d 864, 867 (S.D. Iowa 2025).

### IV.    ANALYSIS

#### A.    *Villegas Salazar is Detained Under § 1225(b)*

Villegas Salazar argued in his pro se petition and reply that he is being detained under 8 U.S.C. § 1226(a). Doc. 1 at ¶ 21; Doc. 11 at 2. Although the argument is not continued in the supplemental petition, I will address it briefly.

Different statutory schemes can govern an alien's detention. Section 1225(b)(1) authorizes the summary removal of arriving aliens who either do not intend to apply for asylum or were not found to have a credible fear of persecution. 8 U.S.C. § 1225(b)(1)(A)(i)–(ii), (B)(iii). Section 1225(b)(2) applies to all "applicants for admission" who are "seeking admission," with certain exceptions inapplicable here, and mandates the alien's detention while removal proceedings are ongoing. *Id.* § 1225(b)(2)(A). Other aliens arrested on a warrant issued by the Attorney General are similarly detained pending removal proceedings but may also be released on bond or conditional parole. 8 U.S.C. § 1226(a); 8 C.F.R. § 1003.19 (2026).

---

[2] Normally, the supplemental petition moots the previous filings and would offer a chance for the parties to provide additional briefing that addresses the supplementation. I find that process unnecessary here. The core of Villegas Salazar's petition—whether his prior parole places him in a class of aliens deserving of a bond hearing—remains the same such that the Government's response addresses the same arguments.

In recent months the interplay between § 1225(b)(2) and § 1226(a) has become a hotly contested issue, with many cases addressing the question of which aliens qualify for the mandatory detention scheme of § 1225(b)(2) as "applicant[s] for admission . . . seeking admission." The answer, in the Eighth Circuit, is that all aliens present in the United States without having been admitted fit the definition. *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). The fact that an alien was paroled into the United States under the Secretary's discretionary power does not change this status. 8 U.S.C. § 1182(d)(5)(A) ("[S]uch parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall . . . have been served the alien shall forthwith be returned to the custody from which he was paroled and thereafter his case shall continue . . . in the same manner as that of any other applicant for admission to the United States."). Because Villegas Salazar has neither been admitted into the United States nor previously detained or released under § 1226(a),[3] *Avila* dictates that he is subject to the mandatory detention scheme of § 1225(b).

### B. Procedural Due Process Claim

Although *Avila* forecloses Villegas Salazar's statutory right to a bond hearing, it says nothing about the due process rights for those aliens subject to mandatory detention. *Avila*, 170 F.4th at 1140 & n.8 (Erickson, J., dissenting). Even when facing removal

---

[3] Some courts have found that when the Government initially treats an alien as detained under § 1226(a), the alien is entitled to a bond determination hearing according to § 1226(a). *See, e.g.*, *Hernandez-Torres v. Mullin*, No. 26-cv-214, 2026 WL 1430705, at *2 (D. Neb. May 21, 2026); *Souleimane C. v. Blanche*, No. 26-cv-2215 , 2026 WL 1180075, at *4 (D. Minn. Apr. 30, 2026). Others have found that when an alien was released according to an order issued under § 1226(a), that order must be formally revoked according to proper procedures even if the alien is now categorized under § 1225(b)(2). *See, e.g.*, *Singh Dhillon v. Mullin*, No. 26-cv-229, 2026 WL 1587371, at *3 (D. Neb. June 3, 2026); *Salazar v. Noem*, No. 26-cv-1040, 2026 WL 381889, at *1 (D. Minn. Feb. 11, 2026); *C.T.P. v. Bondi*, No. 26-cv-1688, 2026 WL 632540, at *2 (D. Minn. Mar. 6, 2026).

4

proceedings, aliens still have due process rights. *Yamataya v. Fisher* (the Japanese Immigration Case), 189 U.S. 86, 100–01 (1903). The issue is the extent of those rights.

Villegas Salazar advocates that I adopt the familiar *Mathews*[4] balancing test for deciding whether he is due a bond detention hearing. Doc. 15 at 5. Under *Mathews*, the court must balance "the interest at stake for the individual, the risk of erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (citing *Mathews*, 424 U.S. at 334–35). However, as Villegas Salazar concedes, I have already considered and rejected the applicability of the *Mathews* factors for bond redetermination hearings such as here. *See Coronel Mejia v. Gardner*, No. 26-cv-64, 2026 WL 1557466, at *3 (N.D. Iowa June 2, 2026).[5] Instead I have found that those subject to the mandatory detention provision of § 1225(b)(2) are not entitled to bond redetermination hearings unless they belong to a certain class of aliens who were conferred greater due process protections, such as those who were voluntarily released before their re-detention. *See Singh v. Mullin*, No. 26-cv-56, 2026 WL 1021846, at *3–4 (N.D. Iowa Apr. 15, 2026). I adopt the same reasoning here.

As an initial matter, Villegas Salazar's parole has expired and has not been extended. I do not question the propriety of the Government's decision on that matter, as it is reserved for the Secretary of Homeland Security to make and outside of judicial

---

[4] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

[5] This is not to minimize the significant liberty interest at issue for Villegas Salazar. The proper framework for evaluating an alien's procedural due process rights is not settled and should the *Mathews* factors be the appropriate methodology for resolving his challenge, I would find that he has a procedural due process right to a bond redetermination hearing for the reasons set forth by those courts that have applied the test. *See, e.g.*, *Muse v. Mullin*, No. 26-cv-4024, 2026 WL 1008532, at *4 (N.D. Iowa Apr. 14, 2026); *Abbas v. Schneider*, No. 26-cv-132, 2026 WL 1079292, at *7–8 (S.D. Iowa Apr. 17, 2026); *Aleksei M. v. Warden, Lawrence County Jail*, No. 26-cv-5030, 2026 WL 1133615, at *5–6 (D.S.D. Apr. 27, 2026).

5

bounds to review. *See* 8 U.S.C. § 1182(d)(5)(A) (leaving to the Secretary the discretion to grant parole and when to revoke it); *Hirey v. Noem*, No. 25-cv-4075, 2026 WL 91654, at *3 (N.D. Iowa Jan. 13, 2026) (a federal court lacks jurisdiction to review whether alien's discretionary parole was lawfully terminated). I will therefore continue my analysis with the presumption that Villegas Salazar is no longer paroled in the United States.

Even so, whether Villegas Salazar's parole has expired does not answer the question of whether the fact that he was once granted parole, and left free after its expiration, confers a greater liberty interest. The Government says no. It argues that it has always been clear that Villegas Salazar's parole "can be terminated at any time and for any reason," Doc. 10-3, and that when his parole ended, Villegas Salazar returned to his pre-parole status. 8 U.S.C. § 1182(d)(5)(A). However, the fact that the Government once deemed Villegas Salazar to be worthy of parole, and allowed him to remain at liberty after his parole expired, is significant. Among other things, it establishes that the Secretary previously evaluated his dangerousness and flight risk and made favorable findings as to those characteristics. *See* 8 C.F.R. § 212.5(b) (2026) (discretionary parole "would generally be justified only on a case-by-case basis for 'urgent humanitarian reasons' or 'significant public benefit,' provided the aliens present neither a security risk nor a risk of absconding"). Thus, in granting parole the Secretary necessarily considered the same factors that an immigration judge would consider at a bond hearing. This puts Villegas Salazar in a similar position to those who have been granted release after a bond hearing. It also distinguishes him from those aliens for whom the Government has not previously had the chance to consider their status or circumstances "without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made." *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018).

I conclude that the fact Villegas Salazar was previously evaluated and released confers on him a greater liberty interest than is enjoyed by those applicants for admission who never were. Even though his release on discretionary parole expired lawfully, his

6

liberty interest did not expire with it. *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025); *see also Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (conferral of parole creates a liberty interest); *Young v. Harper*, 520 U.S. 143, 150 (1997) (applying *Morrissey* to pre-parolees). This is especially true here when, despite Villegas Salazar's parole expiring years ago, ICE permitted him to continue to remain at liberty and separately granted him work authorization. For this reason, I find that he is entitled to some form of relief from his status as a detainee with no possibility of release on bond.

As for the form of relief, this case differs to some extent from those in which the Government re-detained aliens under questionable justifications that appeared to renege on past promises. *See, e.g.*, *Singh*, 2026 WL 1021846, at \*4. Villegas Salazar's parole expired, thus making him subject to re-detention. Nonetheless, the circumstances discussed above put him in a category that requires the Government to justify his continued civil detention. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (civil detention is only authorized in "certain special and 'narrow' nonpunitive 'circumstances' where a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" (first citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); then citing *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)). In keeping with other courts that have ordered a bond determination hearing, I will order the Government to justify his continued civil detention by demonstrating, by clear and convincing evidence before a neutral decisionmaker, that Villegas Salazar is a flight risk or danger to the community. *See, e.g.*, *Sandhu v. Mullin*, No. 26-cv-5009, 2026 WL 1146643, at \*6 (D. Neb. Apr. 28, 2026); *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1113 (E.D. Cal. 2025); *see also Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 944 (D. Colo. 2025) ("As a general matter, the Supreme Court has long held that the clear and convincing evidence standard applies to civil detention where an individual's liberty interest is at stake.").

## V.    CONCLUSION

For the reasons set forth herein:

1.    Petitioner Rodrigo Alejandro Villegas Salazar's petition (Docs. 1, 15) for habeas corpus is **granted**.  Respondents are **ordered** to provide Villegas Salazar with a bond determination hearing within **14 days** of this order, at which they will have the burden of proving by clear and convincing evidence that his continued detention is justified.  If respondents do not provide Villegas Salazar with a bond hearing within 14 days, then he must be immediately released from detention under the same conditions he was under immediately before his re-detention in April 2026.

2.    Villegas Salazar's motion (Doc. 2) for interim relief is **denied as moot**.

3.    Pursuant to my order (Doc. 12) appointing counsel, Villegas Salazar's counsel is **directed** to file a financial affidavit on his behalf attesting to his financial eligibility for representation.  The financial affidavit is due within 14 days from the date of this order.

**IT IS SO ORDERED** this 8th day of June, 2026.

_____
Leonard T. Strand
United States District Judge

8